UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
_____

JENNIFER MOBILIA,                                    Civil Action No.: 1:25-cv-34

        PLAINTIFF,                               **VERIFIED COMPLAINT**
                                            **JURY TRIAL DEMANDED**
   -against-

NEXSTAR MEDIA, INC.,
d/b/a WJET/TV,

        DEFENDANT.
_____

      Plaintiff, Jennifer Mobilia, by undersigned counsel, complains as follows against Nexstar Media, Inc. d/b/a WJET/TV:

## NATURE OF COMPLAINT

1. This is a proceeding for declarative relief and damages for violations of Plaintiff's rights under Title VII and the Civil Rights act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act. Plaintiff contends Defendant discriminated against her based on her sex by subjecting her to discriminatory terms and conditions of employment, including paying her substantially less than her male cohort, and retaliated against her because she engaged in protected activity under the relevant statutes.

## JURISDICTION AND VENUE

2. This court has original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343 (4), as this case asserts rights under Title VII.

3. This court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

4. Venue is proper under 28 U.S.C. §1391(b).

5. Plaintiff has exhausted all administrative remedies, by filing a complaint with the Equal Employment Opportunity Commission, Case No. 533-2024-01990, dated May 6, 2024, (**Exh. 1** hereto) and being notified of her right to sue by notice dated November 22, 2024 (**Exh. 2** hereto).

## PARTIES

6. Plaintiff Jennifer Mobilia has been a resident of Pennsylvania at all relevant times hereto. She is female and a member of the protected class as recognized by Title VII and the Pennsylvania Human Relations Act.

7. Defendant Nexstar Media Inc. d/b/a WJET/TV has a principal location at 545 E John Carpenter Freeway, Suite 700, Irving, TX 75062, and is an employer within the meaning of Title VII, and the Pennsylvania Human Relations Act.

## GENDER DISCRIMINATION

8. Plaintiff began her employment with Defendant in their Erie, Pennsylvania location as the solo anchor of the 10 p.m. newscast, and co-anchor of the 11 p.m. newscast on December 17, 2021, when she signed a five-year contract.

9. Plaintiff has over twenty years' experience working in television as a news anchor and reporter. She has degrees in business management and communications from Mercyhurst University and has received countless hours of one-on-one coaching from talent, voice, writing, and image consultants from The Television News Center and Magid Consultants.

10. Over her twenty years of working in the news industry, she has worked in many large markets such as Ft. Myers, Florida; Providence, Rhode Island; Rochester, New York; and Buffalo, New York.

11. When she was first hired by the Defendant, Plaintiff agreed to solo anchor the 10 p.m. newscast and co-anchor the 11 p.m. newscast, Monday through Friday.

12. The 10 p.m. and 11 p.m. anchor position was available because the male anchor, Sean Lafferty, was promoted to News Director in October 2021.

13. Prior to becoming News Director, upon information and belief, Mr. Lafferty was contracted to earn $95,000 in 2022, $97,000 in 2023, and $99,000 in 2024 to co-anchor the 5 p.m., 5:30 p.m., 6 p.m. and 11 p.m. newscasts, while solo anchoring the 10 p.m. newscast.

14. Upon information and belief, Mr. Lafferty was compensated an additional $10,000 per year from October 2021 through March 2023 for the added responsibilities of News Director.

15. On August 5, 2022, Defendant's 5 p.m., 5:30 p.m., 6 p.m. and 11 p.m. female co-anchor, Ms. Jill McCormick, left the station after 12 years of employment. At that time Defendant informed Plaintiff she would be taking on the added responsibilities of the 5 p.m., 5:30 p.m. and 6 p.m. newscasts permanently, in addition to the 10 p.m. and 11 p.m. newscasts she originally agreed to do.

16. Ms. McCormick's contract had expired in December 2021. She left the station in 2022 after Defendant denied her a $5,000 salary increase. At the time, Ms. McCormick was only making $61,000 per year, whereas her male co-anchor, Mr. Sean Lafferty, was making $95,000 per year, plus an additional $10,000 per year as News Director, for a total of $105,000. At that time, Ms. McCormick was co-anchoring 5 p.m., 5:30 p.m., 6 p.m. and 11 p.m. newscasts, while Mr. Lafferty was only anchoring 5 p.m., 5:30 p.m. and 6 p.m. newscasts.

17. At the time of her departure in 2022, Ms. McCormick had 31 years' experience in the television news industry, 28 of those years, Ms. McCormick was a high-profile anchor and reporter at Defendant's competition. Mr. Lafferty had 35 years.

18. In 2022, Defendant denied Ms. McCormick a $5,000 raise, but Defendant gave a male weekend anchor, with significantly less experience than Ms. McCormick, a $9,000 salary increase after only two years' employment.

19. Plaintiff began co-anchoring the 5 p.m., 5:30 p.m. and 6 p.m. newscasts on August 8, 2022. Plaintiff currently makes $63,000 per year.

20. At WJET-TV, the 5 p.m., 5:30 p.m. and 6 p.m. newscasts are the highest rated shows in the market and generate significantly more revenue for the Defendant than any other show.

21. Plaintiff and Mr. Lafferty co-anchor the 5 p.m., 5:30 p.m., 6 p.m. and 11 p.m. newscasts. Plaintiff solo anchors the 10 p.m. newscast.

22. It is custom in the news industry that when an anchor is promoted to a higher profile position with more responsibilities, like Plaintiff has been, that anchor receives additional pay.

23. While Plaintiff's employment contract states that management may need her to complete additional duties "from time to time," by adding additional news broadcasts to her workload, Defendant has permanently doubled what she was originally hired to do and have not granted her any additional compensation.

24. Plaintiff had an increased workload, more than that of her male co-anchor. She requested a raise from Defendant to compensate for the increased amount of work she was having to complete.

25. At that time, and since, Defendant denied Plaintiff's requests for additional compensation, stating that there is not enough money in the budget to increase her salary.

26. The News Director hired by the station in 2023 is a white man who had no television news experience. He was paid $71,000 per year. This is almost $10,000 more than Plaintiff is making, despite her having over 20 years' experience in television news. Upon information and belief, he resigned in December 2024.

27. Under that News Director, Plaintiff was routinely excluded from discussions of content or editorial decisions. Mr. Lafferty and the male producer were included, but not any women.

28. On one occasion, Plaintiff did participate in a pre-election meeting, but she was asked to leave the meeting, even though she was the only person present who had worked at another television station and could share how elections were covered at other stations.

29. Plaintiff reasonably asked for her salary to be raised to $70,000 per year. This request was denied.

30. Defendant subjected Plaintiff to gender discrimination by failing to pay her the same or similar as her male cohort and retaliated against her when she asked for her salary to be comparable to Mr. Lafferty.

31. Plaintiff has and continues to be treated differently than Mr. Lafferty with how the station features him, the fact that she is expected to cover for reporters or other anchors when they are off sick or take vacation, but he is not expected to do so. Plaintiff is required to clear her time off requests with Mr. Lafferty, but he is not required to do so with her.

32. Defendant had a duty to protect Plaintiff from discrimination and a hostile work environment.

33. After Plaintiff raised her concerns of gender discrimination to Defendant, Defendant informed her that they would be hiring a third evening anchor. This came as a shock to Plaintiff, as she had been told previously, numerous times, that she would be absorbing Ms. McCormick's duties, and there was no money in the budget to raise Plaintiff's salary.

34. Defendant has two male reporters and two female reporters.

35. In November 2023, Defendant hired Ms. Nicole Lee as a reporter and fill-in news anchor. Ms. Lee is a woman in her mid-50s with more than 25 years' experience in television news. In July 2024, Defendant hired Tyler Gallagher, a 22-year-old male college graduate with no TV news experience, but his salary is $2,800 more than Ms. Lee. Additionally, in May 2024 Defendant

offered Matt Mathias, Defendants other male reporter with two years' experience, a contract extension. Mr. Mathias is now making $3,000 more than Ms. Lee.

36. In January 2023, Defendant hired Ms. Jade Leah Burns, a black female reporter who was already working at the station as a producer. When Mr. Gallagher was hired in 2024, he was making $2,800 more than Ms. Burns. In January 2025, after initially declining to offer Ms. Burns a contract extension, Defendant offered her $33,280. Because Ms. Burns has almost three years' experience, Defendant agreed to pay her $34,000. Ms. Burns is now making exactly what Mr. Gallagher is making, despite having more experience. Ms. Burns is also making $2,000 less than Mr. Mathias, who has the same level of experience.

37. As a result of the hostile work environment and discrimination, Plaintiff has experienced medical symptoms.

## FIRST CAUSE OF ACTION – GENDER DISCRIMINATION/RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e

38. Plaintiff repeats and realleges every allegation in paragraphs 1 through 37 of this Complaint with the same force and effect as though fully set forth herein.

39. At all relevant times herein, Plaintiff was a female employee with the meaning of Title VII.

40. Defendant engaged in a pattern and practice of discrimination against Plaintiff on the basis of gender in violation of Title VII by subjecting Plaintiff to disparate treatment as set forth above, which included discriminatory terms and conditions of employment.

41. Defendant also retaliated against Plaintiff.

42. As a direct result of Defendant's acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and other incidental and consequential damages and expenses.

43. Defendant's conduct was outrageous, was done in a deliberate and malicious manner intended to injure Plaintiff and was done in conscious disregard to Plaintiff's rights. Therefore, Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION – GENDER DISCRIMINATION/RETALIATION IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

44. Plaintiff repeats and realleges every allegation in paragraphs 1 through 43 of this Complaint with the same force and effect as though fully set forth herein.

45. At all relevant times, herein, Plaintiff was a female employee within the meaning of the Pennsylvania Human Relations Act

46. Defendant engaged in a pattern and practice of discrimination against Plaintiff on the basis of gender in violation of the Pennsylvania Human Relations Act by subjecting Plaintiff to disparate treatment as set forth above, which included discriminatory terms and conditions of employment.

47. Defendant also retaliated against Plaintiff.

48. As a direct result of the Defendant's acts against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and other incidental and consequential damages and expenses.

WHEREFORE, Plaintiff requests relief as hereinafter provided:

a) Empanel a jury to hear Plaintiff's complaint;

b) Enter judgement declaring the acts and practices of Defendant to be in violation of the laws of the United States and the State of Pennsylvania;

c) Issue a permanent injunction ordering Defendant to cease and desist from engaging in the illegal and unlawful acts and practices described herein;

d) Award Plaintiff the amount of wages, including fringe benefits, lost as a result of Defendant's discrimination;

e) Award Plaintiff compensatory damages for losses resulting from Defendant's discrimination;

f) Award Plaintiff punitive damages;

g) Award Plaintiff the cost of this action, together with interest and reasonable attorney's fees.

Dated: Buffalo, New York
      February 6, 2025

*/s/ Elliott J. Ehrenreich*
Elliott J. Ehrenreich, Esq.
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203

Harvey P. Sanders, Esq.
SANDERS & SANDERS
401 Maryvale Drive
Cheektowaga, NY 14225
*Pro Hac Vice Pending*

*Attorneys for Plaintiff*